[No. 13.   Decided February 5, 1890.]

## INA BROTTON v. CHARLES LANGERT AND J. H. WILT.

COMMUNITY PROPERTY — NOT LIABLE FOR PERSONAL JUDGMENT
AGAINST HUSBAND.

Under the laws of this state (Code Wash. T., ch. 183), community
real estate is exempt from execution on a judgment rendered against
the husband, who, as constable, wrongfully sold mortgaged personal
property, under execution. (STILES, J., dissents.)

### *Appeal from District Court, Pierce County.*

The appellee, Charles Langert, obtained a judgment
against appellant's husband, M. Brotton, for $1,000, be-
cause the latter, as constable, had sold on execution per-
sonal property in which the appellee had a special property,
as mortgagee.   Appellant sought to prevent a judgment
lien being extended over community real estate, and to ob-
tain a writ of injunction to prevent appellee from selling
the community property of appellant, under and by virtue
of the judgment obtained by Charles Langert against appel-
lant's husband.   Appellee Langert demurred to the peti-
tion, and also moved the court to dismiss the action.   The
court sustained the demurrer and dismissed the action,
and plaintiff appealed.

*E. W. Taylor*, for appellant.

As a general rule, only such property as the owner or
debtor himself might sell, can be taken on execution
against him.   Its operation is always limited by the ex-
tent of the debtor's power of alienation.   *Thomas v. Baum*,
14 N. J. Eq. 40; *Combs v. Jordon*, 22 Am. Dec. 248; *French
v. Mehan*, 56 Pa. St. 286; *Gentry v. Wagstaff*, 3 Dev. (N.
C.) 270; *Knox v. Hunt*, 18 Mo. 243; *Patton v. Rankin*, 68
Ind. 245; 7 Am. & Eng. Ency. Law, ? 5, p. 127; Bac.
Abr., Dower, G.

The same law that created the community of interest in
Washington Territory, also placed restriction on the forced

sale of the real property thereto belonging.    Code Wash.
T., §§ 2407, 2410.

The grant of right of forced sale in the case of community property is limited to family expenses, education of the children, and debts contracted for the benefit of the community; that is, community debts.  Section 2410, after limiting the husband's power to dispose of community real estate; says: *"Provided, however*, That the community real estate shall be subject to the lien of mechanics and others for labor and materials in erecting structures and improvements thereon, as provided by law in other cases, to liens of judgments recovered for community debts, and to sales on execution issued thereon."  This proviso is a limitation on the power of a creditor to compel the involuntary sale of community real estate, and expressly says that such property is subject to sale only for the causes therein mentioned.  The effect of that proviso is, that a judgment shall not be a lien, nor shall an execution issue against the same unless clearly within the cases therein provided; and if the power of sale could be found in the common law, then the common-law rule, that an estate held by entirety could not be taken under execution, would be as strong a barrier to such sale as is said proviso.

The community interest is blended in one, and is held as a unity by the husband and wife.    *Holyoke v. Jackson*, 3 Wash. T. 239; *Rorer* on Judicial Sales, 644.

A tort committed by a husband cannot become a community debt.

Referring to § 2410 of the Code of Washington, it will be seen that the judgment must be obtained upon a debt of a certain class — lien on the property, family expenses, community claim, or debts.  The consideration of the judgment, the cause of the action, must be a community debt. Do the acts complained of entitle the defendant, Langert, to maintain a suit against Ina Brotton, the appellant? Could this judgment be enforced against her separate es-

tate? She is nowise responsible for the tort. But, say the respondents, the cause of action was merged in judgment; the judgment is a debt, and being subsequent to the creating of the community, can be enforced against this species of property.

The merger of the claim in a judgment does not change the nature of the claim *in toto;* the contention over which the parties were engaged is merged into the judgment, and nothing more. Freeman on Judgments (2d ed.), § 244; Field's Lawyer's Briefs, vol. 3, p. 215, § 225. In this case, if the cause of action is looked into, it will be seen that it is based on a tort and not on a debt. *Evans v. Sprague,* 2 Md. 457; *Wyman v. Mitchell,* 1 Cow. 316; *Clark v. Bowling,* 3 N. Y. 216.

There is no way for a creditor to get a judgment lien conclusively operative upon community real estate, except as a result of an action or proceeding to which both husband and wife were parties, and in which the community character of the debt is admitted or in issue. *Andrews v. Andrews,* 3 Wash. T. 290; *Smith v. Sherwin,* 11 Or. 269; *Rogers v. Newberry,* 105 Mass. 553.

The restraint placed upon the power of the husband to alienate community real estate *nolens volens,* is an absolutely positive and direct inhibition, and cannot be defeated by an indirect and circuitous contrivance. When anything is prohibited directly, it is prohibited also indirectly. Coke's Littleton, p. 223; 2 Inst., p. 248; Broom's Legal Maxims (17th ed.), p. 489; *Kendall v. United States,* 12 Pet. (U. S.) 605; 2 Fish. Dig. 2119. Unless the wife join in the act of alienation, or unless the foundation of the right to enforce an alienation be within the class named in §§ 2405, 2407 and 2410 of the code, the courts will not, by the mere fiction of merger, contravene the positive letter of the law, and make meaningless a plain statute of the state, unsettle the law and override well-considered cases settling the status of real property. *Holyoke v. Jackson,*

3 Wash. T. 235; *Hoover v. Chambers,* 3 Wash. T. 27; *Lee v. De Deiabler,* 12 Cal. 330.

*Judson, Sharpstein & Sullivan,* for appellees.

We do not concede appellant's proposition that only such property as the legislature says can be sold on execution may be seized. The legislature of Washington Territory, at its first session, enacted that "all property, real and personal, of the judgment debtor not exempt by law, shall be liable to execution;" Acts 1854, p. 177, § 251; and this has continued to be the law until the present time. Code, § 333.

The only real estate exempt from execution is a homestead to a "householder, being the head of a family," equal to $1,000 in value.

Counsel contends that as to community real estate the legislature has made a special exemption. He refers to § 2410 of the code, which reads as follows: "The husband has the management and control of the community real property, but he shall not sell, convey or encumber the community real estate, unless the wife join with him in executing the deed or other instrument of conveyance by which the real estate is sold, conveyed or encumbered, and such deed or other conveyance must be acknowledged by him and his wife: *Provided, however,* That all such community real estate shall be subject to the liens of mechanics and others for labor and material furnished in erecting structures and improvements thereon as provided by law in other cases, to liens of judgments recovered for community debts, and to sale on execution issued thereon."

The language of section 2410, preceding the proviso, is so sweeping and positive that it might be construed to mean that as a husband could not directly convey or encumber real estate without the joinder of his wife, this could not be done indirectly by permitting him to contract

debts or liabilities, which, being reduced to judgment, would become liens and encumbrances on the community real estate.   To prevent any such construction the proviso was inserted.   "The proviso is generally intended to restrain the enacting clause and to except something which would otherwise have been within it, or in some measure to modify the enacting clause."   *Waymon v. Southard,* 10 Wheat.

The language of the proviso under discussion is, "Provided, however," that is to say, that the first part of the section shall not affect the liability of the community real estate for debts or liabilities contracted during the existence of the community.

Counsel's *piece de resistance* is his argument likening the community real estate to the common-law estate by entireties.   But a husband could convey and encumber his life estate in the property held by entireties, and the same interest could be sold on execution for a judgment obtained against him alone.   *Barber v. Harris,* 15 Wend. 615; *French v. Mehan,* 56 Pa. St. 286; *Stoebler v. Kneer,* 5 Watts, 181; *Brownson v. Hull,* 16 Vt. 309; *Bennett v. Child,* 19 Wis. 365.

The very reason the husband's interest in the estate by entireties could be sold, was because he had the control and management of the estate; precisely the power given the husband over the community realty.

The opinion of the court was delivered by

DUNBAR, J. — The appellant by her complaint filed in the district court of Pierce county, sought to prevent a judgment lien being extended over community real estate, and to obtain a writ of injunction to prevent the appellee from selling the community property of appellant, under and by virtue of a judgment obtained by the appellee, Charles Langert, in a suit against appellant's husband as constable, he, as said constable, having sold personal prop-

erty in which appellee had a special property, in execution against a person other than appellee. The appellant obtained a temporary restraining order. On the hearing of the case appellee demurred to the petition, and assigned as grounds of demurrer that it did not state facts sufficient to constitute a cause of action. The demurrer was sustained and the case dismissed; from which orders and decrees the appellant appealed to this court. In this case it is conceded that the property in question is community property, and that the judgment obtained against M. Brotton was a personal judgment for a tort. Hence, the primary question involved is, whether or not community real estate is exempt from execution on a judgment rendered against an individual member of the community when the debt for which the judgment was obtained was not incurred for the benefit of the community.

The community, composed of husband and wife, is purely a statutory creation; and to the statute alone must we look for its powers, its liabilities and its exemptions. Nor are we much enlightened by quotations from the common law in relation to the property rights and liabilities of husband and wife; for, while we ordinarily look to the rules and maxims of the common law to aid us in the construction and analysis of statutes, it was plainly the intention of the legislature, in the session of 1879, in the passage of the chapter denominated "Property rights of married persons," Code Wash. T., chap. 183, to depart from the common law and breathe into legal existence a distinct and original creation, partaking, somewhat, of the nature of a partnership and of a corporation, but differing in some essentials from both; and this creature is termed a "community." The statute alone determines who the members of the community shall be, the manner in which it shall acquire property, and defines and limits not only the powers of the members of the community over said property, but protects it from acquisition by others, excepting in the

manner specified. It also lays down its own rule of con-
struction in the language of the act itself: "The rule of
common law that statutes in derogation thereof are to be
strictly construed, has no application to this chapter. This
chapter establishes the law of this territory respecting the
subject to which it relates; and its provisions and all pro-
ceedings under it shall be liberally construed with a view
to effect its object." Then the pertinent and vital question
becomes, What was the object sought to be effected? Sec-
tion 2396 provides, "That every married person shall
hereafter have the same right and liberty to acquire, hold,
enjoy and dispose of every species of property and to sue
and to be sued as if he or she were unmarried," and
§ 2398 abolishes "all laws imposing civil disabilities upon
a wife which are not imposed upon a husband," and suc-
ceeding sections define what separate property is, and pro-
vide how it may be acquired and in what manner disposed
of. So far the evident object of the law is, to place hus-
band and wife on an equal footing in relation to property
matters. Section 2409 is as follows: "Property not ac-
quired or owned, as prescribed in §§ 2400 and 2408, ac-
quired after marriage by either husband or wife, or both,
is community property. The husband shall have the man-
agement and control of community personal property, with
a like power of disposition as he has of his separate per-
sonal property, except that he shall not devise by will more
than one-half thereof." This section discriminates in favor
of one spouse only so far as is actually necessary for
the transaction of ordinary business. Section 2407 pro-
vides that the expenses of the family and the education
of the children are chargeable upon the property of both
husband and wife, or either of them, and in relation thereto
they may be sued jointly or separately. Section 2410 reads
as follows: "The husband has the management and con-
trol of the community real property, but he shall not sell,
convey or encumber the community real estate, unless the

wife join with him in executing the deed or other instrument of conveyance by which the real estate is sold, conveyed or encumbered, and such deed or other instrument of conveyance must be acknowledged by him and his wife: *Provided, however*, That all such community real estate shall be subject to the liens of mechanics, and others, for labor and material furnished in erecting structures and improvements thereon, as provided by law in other cases, to liens of judgments recovered for community debts, and to sales on execution issued thereon." Construing all the provisions of the chapter together, we cannot escape the conclusion that the object of the law was to protect (so far as is consistent with the transaction of ordinary business, as we before observed) one spouse from the misdeeds, improvidence or mismanagement of the other concerning property which is the product of their joint labors. It is in the nature of an exemption, and, as has been well said, "exemption laws are upheld upon principles of justice and humanity." The statute provides the ways in which this property can be alienated: First, the voluntary alienation by the husband and wife joining in the deed; second, by making it responsive to certain demands, constituted liens by the statute; and there is no other way contemplated. In fact, the very object of the law is to prevent its alienation in any other way. It expressly provides that the husband shall not sell, convey or encumber it, and he will not be allowed to do, by indirection or fraud, that which he is directly prohibited from doing. The practical result to the non-contracting spouse would be the same whether the law allowed the other spouse to directly convey the property, or allowed the title to pass through the medium of a sale on an execution flowing from a judgment to which he, or she, was not a party. It is the results the law regards; the modes are not important.

If the theory of the appellee is correct, that a personal judgment against the husband will become a lien on the

community real estate, then certainly there is no meaning
in the proviso to § 2410, for the liens there specified would
attach without the proviso.    If a judgment which is *not*
obtained for a community debt becomes a lien upon com-
munity real property without any special proviso, why
make a special proviso for a judgment which *is* obtained
for a community debt?    It is very evident that the inten-
tion of the statute was, that community real estate should
not be subject to liens on any judgments excepting those
mentioned in the proviso and for the causes mentioned in
§ 2407; and these exceptions are founded on reason and
right, because the labor and material furnished by mechan-
ics in erecting structures on the land enhance the value of
the community realty, thereby benefiting the community
and becoming practically a community debt; and the reason
for charging the expenses of the family or the education
of the children to the community are too obvious for dis-
cussion.    It was held by the supreme court of Oregon in
the case of *Smith v. Sherwin*, 11 Or. 269, that the wife
could not be held liable in an ordinary action for goods
sold and delivered when such goods were sold upon the
order of the husband, although the same were devoted to
family use, under a statute which provides: "That con-
tracts may be made by a wife and liabilities incurred by or
against her to the same extent and in the same manner as
if she were unmarried;" and which further provides that
the property of both husband and wife shall be chargea-
ble with family expenses; being substantially the same as
§§ 2396 and 2407 of the code.    This decision was based on
the ground that the complaint did not affirmatively show
that the goods sold were for the benefit of the family.    In
the case of *Andrews v. Andrews*, 3 Wash. T. 286, the court
says: "So long as there is only a judgment lien confessed
or suffered by the husband alone, the community interest
in real estate is not affected, unless in fact the debt upon
which the judgment was given was a community debt.

6—I WASH.

The force and qualification of the lien of a judgment to which the husband only is a party, as affecting real estate, is given in § 2410 of the code, by way of proviso to the restriction on the power of the husband to alienate or encumber such property. In the statute itself, the wife and all the world had notice of the limitation of such a lien in regard to such property. Indeed, the judgment not being determinative of any issue as to the character of the property which is to be included in its lien, the husband himself would be at liberty to contest the extension of the lien over community real estate." But we are met by arguments, in the brief of counsel for appellee, asserting that this construction of the statutes will lead to unsettling business relations, and many supposable cases of hardship to creditors are earnestly dwelt upon; but this is a branch of the subject entirely within the jurisdiction of the legislature. Once it is conceded that this is a rightful subject for legislation, which will scarcely be denied, there is no limit to legistative authority, and it is not the province of a court to speculate or theorize upon the practicability or impracticability of the laws, or the good or bad effects which may result from such laws. These are subjects for legislative consideration, and not for judicial determination. We think the judgment obtained against Brotton was not a judgment for a community debt, that the petition did state facts sufficient to constitute a cause of action, and that the sale should have been restrained.

It follows that the judgment will be reversed, and the cause remanded to the court below, with instructions to proceed in accordance herewith.

ANDERS, C. J., and HOYT and SCOTT, JJ., concur.

STILES, J. (dissenting). — I dissent. It was contended in this case that the "community debts" mentioned as chargeable upon community real property in the act of 1881 (Code, § 2410) do not include a judgment against a

husband who was a constable, and who, while acting as such officer, took property in execution upon which there was a chattel mortgage, and sold the property so that it became scattered and lost to the mortgagees, the judgment being for damages for that wrong. The act in question nowhere undertakes to say what a community debt is; nor does it use any language by which it can be said that a community debt is to be anything different under this act from what it was under the previous community property statutes of 1869, 1871, 1873 and 1879. "Debts" are spoken of in all these acts as liabilities to pay, without any regard to the technical difference between "debts" and "torts." In numerous instances in each of them there are negative provisions like these: "The earnings of the wife are not liable for the debts of the husband;" "the separate property of the husband (or wife) is not liable for the debts of the wife (or husband) contracted before marriage;" and in §§ 2400 and 2408 of the act in question the separate property of husband and wife is not subject to the "debts or contracts" of the other. Would it be contended that because these terms "debts" and "contracts" are used, and no reference is made to "torts," therefore, the separate property of the husband and wife would be liable for the torts of the other? In § 25 of the act of 1879, the term "debts" was used as synonymous with "judgment or decree," no matter for what cause of action rendered. And so here, while there may possibly be some purely personal wrongs by a married person that should be first compensated out of the separate property of the wrong-doer, where, as in the case at bar, the constable was pursuing his usual avocation for the benefit of the community and not maliciously, but through a mistaken idea of his duty, he incurred a liability to recompense the mortgagee, I see no reason whatever for holding this not to be a liability or debt for which the community real estate is, by the statute, answerable.

The fact that the result of the liability has not been to the pecuniary advantage of the community, certainly can make no difference in a court of justice, where advantages are not material. A good or a bad bargain cannot make the difference between right and wrong, and the community of husband and wife has not yet become so helpless a thing that we need presume in its favor as though it were a minor or an imbecile. Under all former community property acts this judgment could have been made out of community property without any statute provision on the subject. Section 19 of the act of 1871, which was the least liberal of all these acts, had this provision : " When real estate, common property, shall be sold for indebtedness of the wife or the husband only, no more shall be sold than shall be necessary to satisfy the indebtedness and cover costs," etc. Yet under that act the husband could not sell community property without the wife's joinder. By the act of 1879 no real property, either separate or community, could be sold, encumbered or in any way disposed of without the joinder of the husband and wife in the instrument; but I have never heard or read a suggestion that under that act a separate debt of either husband or wife could not be collected out of the separate real property of either without the consent or deed of the other. Obviously, it was considered by the framers of that act that the matter of the voluntary alienation of lands had nothing to do with the rights of creditors, and while they hampered the husband and wife to an excessive degree, as between themselves, they placed no restrictions against the collection of just debts. Yet if we were to hold in this case, that because the husband cannot sell, convey or voluntarily encumber without the wife's joinder, no liability incurred by him, as this one was, can be charged against community property, then we should be bound to hold, in any case arising under the act of 1879, that without the wife's consent, by deed, the husband's debt incurred before marriage

could not be collected out of his real property acquired before marriage; for the language of the two acts is precisely alike.

The only ground urged for the decision of the majority seems to be under the claim that the wife has a veto upon voluntary conveyances and encumbrances of community real estate for her protection against her husband; and that the husband must not be allowed to do that by fraud or indirection which he cannot do directly. The same argument would apply to the incurrence of *every* debt under the act of 1879, and to the collection of ante-nuptial debts as well. But there is no question of fraud in this case, and there is now no propriety in using that argument. Here the question is simply whether the wife shall, while she is fully protected in the possession of her separate property, and of her earnings, take her share of the risk that her husband will conduct the business of the community without loss; nay, it is not that only, but whether the husband himself shall be allowed to hide behind the ample skirts of his wife, in case of his "torts," to the ruin of the victim of his ill-advised action. So far as the proviso at the end of § 2410 is concerned, I fail to see what importance it has there. It is merely declaratory of what would be the law without it, and adds no force to this section of the act. It is a literal copy of a section in the act of 1879, and had all the force in that act which it has in this. It has been argued, however, that since this proviso says that liens for labor and materials and judgments for community debts are chargeable upon community real estate, it is to be taken as an instance of " *expressio unius alterum excludit,*" and therefore no other obligation is to be recognized. But let it be remembered that the maxim quoted is a common-law maxim, and the argument is one for strictness of construction; whereas it is one of the requirements of the act in question that the common-law rules of construction are not to prevail here,

and that all its provisions are to be construed liberally; but liberality can certainly not be predicted of a ruling that shields property from levy for a debt of the owner. A community debt, within the meaning of the act of 1881, ought to be any liability incurred by either husband or wife during their marriage, and which is not a separate debt by its express terms, or by reason of its being patently for the exclusive benefit of the separate property of the party contracting it. This has been substantially the construction put upon the term ever since the community property laws have existed here, by the business men of the state as well as the legal fraternity. To depart from it now will, in my judgment, greatly disturb the safety of business interests, and unsettle titles to an alarming extent; and to hold with the appellant is not logically necessary under the terms of the statute.

I cannot believe that it was the intention of the legislature of 1881 to withdraw all this community real estate from liability for accommodation endorsements, guarantees, and especially official bonds, as well as the hundred engagements that married men enter into every day, but which have no relevancy to their community interests, and cannot be said to benefit them. It is said that these obligations can be made good by securing the signature of the wife; but I deny it. If the signature of a husband to the bond of a county treasurer does not make the obligation collectible out of his community real property, because the debt is not one for the benefit of the community, it is idle to say that adding the signature of the wife will change the character of the debt and make it so collectible. And so on. The combinations and confusions are endless, if this doctrine is once announced.

The judgment should be affirmed.