[Civil No. 2359.   Filed June 19, 1925.]

[237 Pac. 175.]

# W. H. T. COSPER, Appellant, v. THE VALLEY BANK, a Corporation, Appellee.

1. QUIETING TITLE—WHEN SUIT TO QUIET TITLE BY GRANTEE, AS AGAINST ONE CLAIMING JUDGMENT LIEN AGAINST HIS GRANTOR, WILL LIE STATED.—When party, bringing action to quiet title, has no meritorious defense as against original lien, but claims that a subsequent technical defense has arisen since attachment of lien, equity will not intervene to quiet title without payment of the debt, but when by reason of extraneous circumstances, not appearing in the record, judgment, though apparently a lien, as matter of fact and law never was one, a suit to quiet title does lie.

2. HUSBAND AND WIFE—JUDGMENT AGAINST PLAINTIFF'S GRANTOR INDIVIDUALLY HELD NOT A LIEN ON COMMUNITY REAL ESTATE. — Where judgment, against plaintiff's grantor, arose out of transaction wholly regarding grantor's separate property, and in no way affecting community interests of grantor and his wife, judgment against grantor individually, especially where his wife was not a party thereto, could not be a lien on community real estate, in view of Civil Code of 1913, paragraphs 3850–3855, making community property liable only for community debts.

3. HUSBAND AND WIFE—ANY DEBT INCURRED DURING COVERTURE PRESUMED TO BE A COMMUNITY DEBT. — Any debt incurred during coverture is presumed to be a community debt, and it is on those asserting the contrary to prove their contention.

4. QUIETING TITLE—SUIT TO QUIET TITLE BY GRANTEE OF REAL ESTATE WOULD NOT LIE AGAINST DEFENDANT CLAIMING JUDGMENT LIEN AGAINST PLAINTIFF'S GRANTOR.—Suit to quiet title by grantee of real estate against defendant claiming a judgment lien against community property of plaintiff's grantor would not lie, where debt, on which judgment was based, was incurred during coverture, and there was no evidence that it was anything but a community debt.

See (1) 32 Cyc., p. 1324, n. 29, p. 1325, n. 31.   (2) 30 C. J., p. 114, n. 37, 38.   (3) 30 C. J., p. 102, n. 40, 41, p. 103, n. 45.   (4) 32 Cyc., p. 1324, n. 29.

APPEAL from a judgment of the Superior Court of the County of Greenlee. Frank B. Laine, Judge. Affirmed.

1. See 5 R. C. L. 664.
2. See 5 R. C. L. 858.
3. See 5 R. C. L. 857.

Mr. A. R. Lynch, for Appellant.

Mr. Charles L. Rawlins, for Appellee.

LOCKWOOD, J.—W. H. T. Cosper, hereinafter called plaintiff, brought suit against Valley Bank, a corporation hereinafter called defendant, to quiet title to certain real estate. The complaint was in the usual form. Defendant answered setting up that plaintiff bought the land from one James V. Parks and wife in January, 1923; that in October, 1921, and when Parks and his wife owned the land, a deficiency judgment of some twenty-five thousand dollars ($25,000.00) was duly docketed against Parks, which was still unpaid, and a lien on the land, this being the interest therein claimed by defendant. The judgment was set up in full, and it appeared that it was against John Gleeson and wife and Parks individually for the balance due on a promissory note after the foreclosure of a chattel mortgage on some cattle owned by Gleeson, which mortgage was security for the note. Plaintiff replied to the answer, alleging that the transaction, out of which the judgment arose, was one in regard to the separate property rights of Parks solely, and in no way connected with the community property or community affairs of Parks and his wife. He claimed that for such reason the judgment could not be a lien on the community real estate. The case was tried before the court without a jury, and judgment rendered for the defendant bank, from which an appeal was taken to this court. There was no conflict in the evidence, and the case must be determined on questions of law, three of which are raised by this appeal.

The first is, Does a suit to quiet title lie by a grantee of real estate as against one who claims a judgment lien against his grantor? It is true that when the party, bringing the action to quiet title, had

no meritorious defense as against the original lien, but claims that a subsequent technical defense, such as the statute of limitations, has arisen since the attaching of the lien, equity will not intervene to quiet the title without payment of the debt. *Provident Mutual, etc.,* v. *Schwertner,* 15 Ariz. 517, 140 Pac. 495. But when the contention is, that by reason of extraneous circumstances not appearing in the record, the judgment, though apparently a lien, as a matter of fact and law never was one, a suit to quiet title does lie. *Richards* v. *Mohr,* 73 Or. 57, 143 Pac. 1102; *Magneson* v. *Pacific Mfg. Co.,* 26 Cal. App. 52, 146 Pac. 69; *Dodsworth* v. *Dodsworth,* 254 Ill. 49, 98 N. E. 279.

The next question is, Do the pleadings set up a case that is within the rule just laid down? Briefly the position of plaintiff, as set forth in the pleadings, is that the judgment against his grantor, James V. Parks, arose out of a transaction which was wholly regarding the separate property of the latter, and in no way affecting the community business or interests of Parks and his wife, and for that reason a judgment against Parks individually in such a suit, and specially where his wife was not a party thereto, could not be a lien on the community real estate. Plaintiff admits that this court in the case of *Villescas* v. *Arizona Copper Co.,* 20 Ariz. 268, 179 Pac. 963, has held against him on this question, but urges that decision is at variance with the general principles of our law of community property, and therefore asks us to reconsider the rule laid down in the Villescas case.

Development of the community property law of the western states has gone hand in hand with the general emancipation of women from the economic bonds which have so long burdened them. While under the common law the husband and wife were "one," and he was always the "one," the world has of recent years gone a long way toward recognizing that even

a married woman was a human being, with most of the rights of such, and that the status of marriage partook more of the nature of a partnership than that of master and servant, or guardian and ward. Naturally this movement has gone further in the newer states, whose institutions had not yet crystallized into form under archaic ideas of the subjection of the female sex, than in the older commonwealths whose laws reflect the views of the generation which founded them. We therefore find in the western states three positions as to the nature of the communuity estate.

The first is that the wife's interest is a mere hope or expectancy, subject to be defeated at any time during coverture by the whim of the husband alone. She cannot, in those states, protect her feeble interests in any manner while the marriage exists, and the husband may convey or encumber the community property at will. *Van Maren* v. *Johnson*, 15 Cal. 308. To this group belong California, and the states of Nevada, Oregon, Idaho, and New Mexico, which have apparently patterned after the former.

The second is that the wife has indeed a vested right in the community estate, but this right is equitable only and the legal title and right of disposition rests solely in the husband. He can therefore sell or encumber the community property, and convey a good title without the wife's consent, but she can in cases of admitted fraud or collusion, to deprive her of her equitable rights, take action to protect them. Texas is in this class. *Patty* v. *Middleton*, 82 Tex. 586, 17 S. W. 909.

The third is that the wife's interest in the community estate is a vested legal one, the same as the interest of any other partner in partnership property, but that for business reasons the statute makes the husband the agent of the community, to handle and dispose of the community personalty for the benefit thereof. This view is held in the state of Washing-

ton.  *Olive Co.* v. *Meek,* 102 Wash. 467, 175 Pac. 33;
*Marston* v. *Rue,* 92 Wash. 129, 159 Pac. 111.

To which group does Arizona belong? This matter
has been carefully considered by us in the case of
*La Tourette* v. *La Tourette,* 15 Ariz. 200, Ann. Cas.
1915B, 70, 137 Pac. 426, wherein the court says:

"The law makes no distinction between the hus-
band and wife in respect to the right each has in the
community property. It gives the husband no higher
or better title than it gives the wife. It recognizes
a marital community wherein both are equal. Its
policy plainly expressed is to give the wife in this
marital community an equal dignity, and make her
an equal factor in the matrimonial gains. It recog-
nizes that property acquired during marriage by com-
munity funds or the labor and industry of either
spouse, except what is earned by the wife and her
minor children while she has lived or may live sep-
arate and apart from the husband, is the common
property of the husband and wife. All that either
the husband or wife or both may acquire during the
existence of the marriage, otherwise than is specifi-
cally excepted, is an acquest of the community, and
the presumption in all doubtful cases is strongly in
favor of treating that which either spouse may own
as community property. It recognizes that the wife
in her station is as much an agency in the acquisition
as the husband, and is entitled to just as great an in-
terest. It is altogether fitting and proper that
woman should be thus esteemed by the law in fixing
her status, if she is to be considered in fact as well as
in theory an essential factor in the economy of the
marital community. It is true that during the cover-
ture the personal property belonging to the commun-
ity may be disposed of by the husband only; but it
is equally true that no sale or incumbrance of the real
estate may be made by the husband without the con-
sent of the wife. She must join in all deeds and
mortgages affecting real estate, except unpatented
mining claims.

"The law, in giving this power to the husband dur-
ing coverture to dispose of the personal property,
does not do this in recognition of any higher or supe-

rior right that he has therein, but because the law considers it expedient and necessary in business transactions affecting the personalty to have an agent of the community with power to act. So it has clothed the husband with this agency, deeming him the best qualified for the purpose, but limiting such agency to the personalty, and during the period of coverture. And this agency to dispose of the community personalty may not be exercised by the husband to defraud his wife, for in one way or another she would have a remedy for a disposition by the husband in fraud of her rights, or made with the intent and purpose of defeating her interest. And further, this power of the husband to dispose of the personal property of the community is limited to the period of coverture, and does not extend to his disposal thereof by will, but he is restricted in the disposal by will to his one-half thereof. . . .

"From its nature and origin this particular estate, arising during the existence of the marriage relation, may not be defined with such precision as will comprehend all of its phases, but in its devolution and descent this species of ownership bears a striking resemblance to two kinds of estates, that of an estate or tenancy by the entirety and a tenancy in common. Upon a dissolution of the marriage relation by death, if there be no child or children of the deceased, all of the property belonging to the community estate of the husband and wife goes to the survivor. In this aspect of the community relationship, the husband and wife may be considered as one, owning the property during the existence of the marriage with the unities of time, title, and interest and possession present, and at the death of one the survivor takes all.

"So, in tenancy by the entirety, each one may be regarded as owning all the property with the unities of person, time, title, interest, and possession with a survivorship. A conveyance of real and personal property to a husband and his wife makes them owners by the entirety at common law. They are not seised as joint tenants *per tout et per my,* but by the entirety *per tout et non per my.*"

It will readily be seen that we have placed our-
selves squarely in accord with the view prevailing in
the state of Washington, and this is but natural, for
our statutes on this subject are more analagous to
those of that state than to any other.   Our commu-
nity property law is found in chapter 3, tit. 32, of
the Revised Statutes of 1913, containing some 10
short paragraphs.   We will compare the principal
ones with the corresponding sections of the Washing-
ton Code, quoting first the Arizona Code of 1913, and
immediately thereafter the paragraph from Reming-
ton's Compiled Laws of Washington, 1922, which
deals with the same subject.

Arizona 3850: "All property acquired by either
husband or wife during the marriage, except that
which is acquired by gift, devise or descent, or earned
by the wife and her minor children, while she has
lived or may live, separate and apart from her hus-
band, shall be deemed the common property of the
husband and wife. . . . "

Washington 6892: "Property, not acquired or
owned as prescribed in the next two preceding sec-
tions, acquired after marriage by either husband or
wife, or both, is community property. . . . 6896: The
earnings and accumulations of the wife and of her
minor children living with her, or in her custody
while she is living separate from her husband, are the
separate property of the wife."

Arizona 3850: " . . . And during the coverture
personal property may be disposed of by the husband
only; but husband and wife must join in all deeds and
mortgages affecting real estate except unpatented
mining claims, which may be conveyed by the hus-
band or wife only as provided by the laws of this
state relating to conveyances; provided that either
husband or wife may convey or mortgage separate
property without the other joining in such convey-
ance or mortgage."

Washington 6893: "The husband has the manage-
ment and control of the community real property,
but he shall not sell, convey, or incumber the com-
munity real estate, unless the wife join with him in

executing the deed or other instrument of conveyance by which the real estate is sold, conveyed, or incumbered, and such deed or other instrument of conveyance must be acknowledged by him and his wife. . . . ''

Arizona 3852: ''Hereafter married women shall have the same legal rights as men of the age of twenty-one years and upwards, except the right to make contracts binding the common property of the husband and wife, and shall be subject to the same legal liabilities as men of the age of twenty-one years and upwards.''

Washington 6901: ''All laws which impose or recognize civil disabilities upon a wife, which are not imposed or recognized as existing as to the husband, are hereby abolished, and for any unjust usurpation of her natural or property rights she shall have the same right to appeal in her own individual name to the courts of law or equity for redress and protection that the husband has. . . . ''

Arizona 3854: ''The community property of the husband and wife shall be liable for the community debts contracted by the husband during marriage, except in such cases as are specially excepted by law.''

Washington 6893: '' . . . Provided, however, that all such community real estate shall be subject to the liens of mechanics and others for labor and materials furnished in erecting structures and improvements thereon as provided by law in other cases, to liens of judgments recovered for community debts, and to sale on execution issued thereon.''

Arizona 3855: ''The wife may contract debts for necessaries for herself and children upon the credit of her husband, in which case she and her husband must be sued jointly.''

Washington 6906: ''The expenses of the family and the education of the children are chargeable upon the property of both husband and wife, or either of them, and in relation thereto they may be sued jointly or separately.''

This court in the Villescas case said:

''The other general rule, viz., 'the community property is, in general, also liable for the husband's

debts,' is nearly as universal. 21 Cyc. 1676, and cases cited in note 13; *Johnson* v. *Garner* (D. C.), 233 Fed. 756; *Seabrook* v. *Bank* (Tex. Civ. App.), 171 S. W. 247; *Ochoa* v. *Edwards* (Tex. Civ. App.), 189 S. W. 1022. Washington state, having a peculiar proviso, found in section 2407 of its code, has considered that the community property in that state is not liable to satisfy the husband's debt. See *Brotton* v. *Langert,* 1 Wash. 73, 23 Pac. 688. In the absence of some particular statute to the contrary the general rule seems to have the support of reason, and to accord with the spirit of the community property system as adopted by Statutes of Arizona."

The first case cited in support of the rule is not in point, as the debt was clearly stated to be a community one. The other two cases are from Texas which, as we have seen, has a different theory of community rights from ours. Section 2407 of the Washington Code cited is section 6906, quoted herein, and it will readily be seen it refers to a certain specified class of debts only, and does not in any way touch the question of the general liability of the community for the husband's debts. The case of *Brotton* v. *Langert,* 1 Wash. 73, 23 Pac. 688, was not determined, on the construction of section 2407 (6906, *supra*) but rather on the whole community property code, and particularly section 2410 (6893, *supra*). All the cases cited in 21 Cyc. under the note mentioned, come from states which do not have our general theory of community rights. It is apparent therefore that we did not properly consider the precedents when we determined the Villescas case, and that we should look rather to the Washington decisions for aid. In the case of *Brotton* v. *Langert,* *supra,* the court says:

"Construing all the provisions of the chapter together, we cannot escape the conclusion that the object of the law was to absolutely protect (so far as is consistent with the transaction of ordinary business,

as we before observed) one spouse from the misdeeds, improvidence or mismanagement of the other concerning property which is the product of their joint labors. It is in the nature of an exemption, and, as has been well said, 'Exemption laws are upheld upon principles of justice and humanity.'"

We think the quotation applies equally well to the principles laid down in the Community Property Statutes of Arizona, and indeed since our paragraph 3854, which states for what debts community property shall be liable, refers generally to all such property, instead of being limited as in the Washington Statutes to community real estate only, the rule in Arizona covers community personalty also.

For the foregoing reasons, the rule laid down in the Villescas case is disapproved, and we hold that, under the law of Arizona, community property is liable only for community debts, except as otherwise expressly provided in the statutes, and the reply in the case at bar sets up a good plea in confession and avoidance to the affirmative allegations of the defendant's answer.

But, while such is the law, it is equally true that any debt incurred during coverture is presumed to be a community debt, and it is upon those asserting the contrary to prove their contention. *Bryant* v. *Stetson & Post Mill Co.,* 13 Wash. 692, 43 Pac. 931; *Strong* v. *Eakin,* 11 N. M. 107, 66 Pac. 539.

It clearly appears from the pleadings and the evidence that the debt, on which the judgment set up is based, was incurred during coverture, and there is not a scintilla of evidence it was anything but a community debt. For the reason that the evidence does not sustain the allegations of the reply, the judgment is affirmed.

McALISTER, C. J., and ROSS, J., concur.