**DE LA TORRE v. NATIONAL CITY BANK OF NEW YORK.**

No. 3516.

Circuit Court of Appeals, First Circuit.

March 29, 1940.

Henry G. Molina, of San Juan, P. R. (Luis Llorens Torres and Luis Muñoz Morales, both of San Juan, P. R., on the brief), for appellant.

E. T. Fiddler, of San Juan, P. R., for appellee.

Before MAGRUDER and MAHONEY, Circuit Judges, and PETERS, District Judge.

MAGRUDER, Circuit Judge.

The question on this appeal is whether the Supreme Court of Puerto Rico should be sustained in holding that real estate forming part of the community property of de la Torre and his wife is subject to attachment as security for a judgment against de la Torre on a promissory note which he executed as comaker for the accommodation of his sister in obtaining a loan. As stated in the opinion below, "This accommodation on the part of de la Torre was given without compensation or without any valuable consideration or promise of gain"; nor was the obligation assumed with the knowledge of, or ratification by, his wife. Relevant portions of the Civil Code of Puerto Rico (Ed. 1930) are copied in the footnote.[1]

[1] "Section 91.—The husband shall be the administrator of the conjugal property, except when stipulated otherwise.

"The purchases made by the wife out of the conjugal property shall be valid when the said purchases comprise things or articles for the use of the family, in accordance with their social position.

"Nevertheless the real property belonging to the conjugal community may not be alienated or burdened, such a transaction being null, except when effected with the mutual consent of both parties to the marriage.

"Section 92.—(Section 160, Civil Code of 1902, as amended by act of March 10, 1904, page 183.) The husband and wife shall have the right to manage and freely dispose of their respective separate estates.

"Section 93.—The husband is the legal representative of the conjugal community.

"The wife may contract, and appear in court, in all cases referring to the defense of her own rights and property, to the discharge of the patria potestas, guardianship or administration conferred on her by the law, and to the exercise of a profession, employment or occupation."

"Section 1301.—To the conjugal partnership belong:

"1. Property acquired for a valuable consideration during the marriage at the expense of the partnership property, whether the acquisition is made for the partnership or for one of the spouses only.

"2. That obtained by the industry, salaries, or work of the spouses or of either of them.

"3. The fruits, income, or interest collected or accrued during the marriage, coming from the partnership property, or from that which belongs to either one of the spouses."

"Section 1308.—The conjugal partnership shall be liable for:

"1. All the debts and obligations contracted during the marriage by the husband, and also for those contracted by the wife in the cases in which she can legally bind the partnership.

"2. The arrears of interest, matured during the marriage, of obligations which affect the private property of the spouses as well as the partnership property.

"3. The minor repairs or of mere preservation, made during the marriage, to the private property of the husband or the wife. Extensive repairs shall not be chargeable to the partnership.

"4. Extensive or minor repairs to the property of the partnership.

"5. The support of the family and the education of the children in common, and of the legitimate children of one of the spouses only."

"Section 1310.—The payment of debts contracted by the husband or by the wife, before marriage, shall not be borne by the partnership.

"Neither shall it bear the payment of fines or of pecuniary condemnations which may be imposed on either of them.

"However, the payment of debts contracted by the husband or by the wife, prior to the marriage, and that of fines and condemnations imposed on either of them, may be claimed against the partnership property, after covering the expenses, mentioned in section 1308, if the debtor spouse should have no private capital, or were it insufficient; but at the time of the liquidation of the partnership the payments, made for the specified causes, shall be charged to said spouse."

"Section 1312.—The husband is the administrator of the conjugal partnership, with the exception of what is prescribed in section 91, chapter III, Title IV, Book first, of this Code.

"Section 1313.—Notwithstanding the power which the husband has as administrator he shall not have the power to give, to sell and to bind for a consideration the real estate of the conjugal partnership, without the express consent of the wife.

"Every sale or agreement which the husband may make in respect to the said

110 F.2d—62

978

Our opinion on a previously considered motion to dismiss was rendered December 15, 1939, 110 F.2d 381. Since then an affidavit has been filed by the appellant making clear that the jurisdictional amount of $5,000 is presently involved.

It is curious that the point now raised as to the law of community property has not previously been adjudicated in Puerto Rico, nor, so far as appears, in the courts of Spain. In its original opinion the court below said that "the husband is an administrator with such wide and absolute powers that it is rightly asserted that as regards third parties the partnership and the husband constitute a single entity, a distinction existing only in the relations of the spouses inter se"; that "the interest of the wife in the conjugal partnership during its life is a mere expectancy or hope to receive one moiety of the liquid assets that might be left after the liquidation of the partnership." There is no doubt that this concept of the nature of the wife's interest has been in vogue among civil law commentators. See the review by White, C. J., in Garrozi v. Dastas, 204 U.S. 64, 78–83, 27 S.Ct. 224, 51 L.Ed. 369; McKay, Community Property, 2d Ed., §§ 1096–1108. General expressions, cited by the court below, from the texts of the Spanish commentators Manresa and Scaevola look the same way. 9 Manresa, Comentarios al Código Civil Español (4th Ed. 1930) pp. 571, 579. 22 Scaevola, Código Civil, page 236. The appellant, however, refers to other passages from these writers which have more specific reference to obligations gratuitously assumed by the husband for accommodation of a third person, with no benefit accruing to the marital partnership, and which seem to indicate that the community property would not be subject to attachment or execution on account of debts of that character.[2]

property in violation of this section and the other provisions of this Code, or in fraud of the wife shall be null and shall not prejudice her or her heirs.

"Section 1314.—(Section 1329, Civil Code of 1902, as amended by act No. 48, 1930, p. 368.) Neither husband nor wife may dispose by will but of his (or her) half of the conjugal partnership."

"Section 1328.—The husband and the wife may request the separation of the property, and it shall be decreed, whenever the spouse of the plaintiff should have been condemned to a penalty which includes civil interdiction, or should have been declared an absentee, or should have given cause for divorce.

"In order that the separation may be decreed, it shall be sufficient to present the final judgment rendered against the guilty or absent spouse in each one of the three cases above mentioned."

"Section 1333.—The administration of the property belonging to the marriage shall be transferred to the wife when her husband is incapacitated or absent."

[2] 9 Manrésa, Comentarios al Código Civil Español (4th Ed. 1930):

"It is to be understood that in like manner as donations are prohibited, so also are releases, and all dispositions without consideration (disposición a título lucrativo) by acts between persons in being. The payment of debts of a third person without any equivalent therefor, obligating himself gratuitously, forgiving him debts in whole or in part, loaning on condition that the loan be returned when and if it can be, etc., are acts without consideration that never can be understood to benefit the partnership. Direct or indirect gifts of ganancial property are, of course, prohibited, even although they be disguised under the forms of onerous contracts." (P. 581.)

"The husband, on the other hand, can only make gifts in accordance with the limited terms provided in Arts. 1409 and 1415, and he may have, even during the matrimony, obligations that relate to him alone (que le sean peculiares) in spite of the general expression of paragraph one of article 1408. [Section 1308 of Puerto Rico Code.]

"The consequences of these provisions and principles are:

"1st.—That as a general rule, all obligations and debts contracted by the husband during the marriage are a liability of the conjugal partnership, insofar as such debts represent an equivalent received by the partnership, or by the husband who is presumed to always act in its name, or in the interest of said partnership." (P. 560.)

22 Scaevola, Código Civil (1905):

"Consequently only the debts contracted by the husband for the benefit of the family, for whose maintenance the conjugal partnership is by its very nature constituted, can in good logic with reference to the aforesaid be charged to the property of the conjugal partnership; therefore the provision in no. (1) of art. 1408 [Sec. 1308 of Puerto Rico Code] might, without any inconvenience, be merged into no. (5), which charges the community property with the support of the family and the alimentation of the common children and the legitimate children of one of the spouses.

"Support of the family, in this general

In Warburton v. White, 176 U.S. 484, at page 497, 20 S.Ct. 404, at page 409, 44 L.Ed. 555, in commenting on the system of community property instituted by the statutes of the State of Washington, the court said: "It is a misconception of that system to suppose that because power was vested in the husband to dispose of the community acquired during marriage, as if it were his own, therefore by law the community property belonged solely to the husband. The conferring on the husband the legal agency to administer and dispose of the property involved no negation of the community, since the common ownership would attach to the result of the sale of the property." Again, in Arnett v. Reade, 220 U.S. 311, 31 S.Ct. 425, 426, 55 L.Ed. 477, 36 L.R.A.,N.S., 1040, it was held that a New Mexico statute providing that both husband and wife must join in the conveyance of community real estate, did not, as applied to property acquired prior to the passage of the statute, impair the husband's vested property rights.

The Supreme Court of the state had held the contrary, on the ground that the wife's interest in the community property had theretofore been "a mere expectancy". In the opinion of the court Mr. Justice Holmes said (220 U.S. at pages 319, 320, 31 S.Ct. at page 426, 55 L.Ed. 477, 36 L.R.A.,N.S., 1040):

"The statement also directly contradicts the conception of the community system expressed in Warburton v. White, 176 U.S. 484, 494, 20 S.Ct. 404, 44 L.Ed. 555, 559, that the control was given to the husband, 'not because he was the exclusive owner, but because by law he was created the agent of community.' And notwithstanding the citation in Garrozi v. Dastas, 204 U.S. 64, 27 S.Ct. 224, 51 L.Ed. 369, of some of the passages and dicta from authors and cases most relied upon by the court below, we think it plain that there was no intent in that decision to deny or qualify the expression quoted from Warburton v. White. See [Garrozi v. Dastas] 204 U.S. 78 [27 S.

---

meaning, must be understood to comprise everything which serves the increase of the community property—a most important point in this matter, which is not especially mentioned in the Code, and on which it seems appropriate to give some indications.

"Just as the salary of the husband contributes to defraying the expenses of matrimony, the interests and fruits borne by the property of each spouse are dedicated to the same purpose.

"But the obtaining of the salary or honoraria, and more especially the reaping of the fruits of land, require usually previous expenses. The expense of a trip of the husband in the defense of a lawsuit, which is later on translated into terms of a number of honoraria; the cost of sowing, tilling and harvesting on the land; the taxes paid for immovable property; everything which is a necessary condition for reaching the object which was achieved or at least pursued— how could it be treated otherwise than as a charge to the conjugal partnership, even if such debts are contracted by the sole initiative of the husband?

"In this respect the legal rule that he who shares in the profits, must share in the losses, governs in all its extent; hence the supposition that the husband should pay similar expenses out of his separate property and in return share the gains obtained with his wife, would be entirely absurd and contrary to all long established principles concerning a partnership." (P. 246.)

"The rule is that all to which the husband is bound in favor of the partnership is binding on it, but it is not so when the obligation is for his own personal gain or that of his private property." (P. 247.)

" * * * If it happens that the guarantee given (by the husband) had for its object, directly or indirectly, the support of the family, in all the amplitude that we have heretofore given to this phrase, that is, procuring also the perception or conservation of the income or fruits that are destined (adscritos) for the purpose of the well being of the family, it is unquestionable that the gananciales shall respond to the obligation contracted, in case that the surety should have to be given effect, in which case the provision of law 61 De Toro would be followed, wherein it is permitted that the bond (surety) of a woman in favor of her husband shall be valid when the obligation contracted by the latter were one that had for its object the administration of ecclesiastical properties and the rents of the Crown. But, on the contrary, when the husband becomes a surety for a third party without any possible benefit to the family, that is, for the sole consideration of his own interests, or of his relatives or friends, the situation becomes completely the reverse, the properties of the conjugal partnership not being liable in case of a proceeding against the husband as such surety." (Pp. 248, 249.)

Ct. 224, 51 L.Ed. 369]. Los bienes que han marido y mujer que son de ambos por medio. Novisima Recopilación, Bk. 10, title 4, Law 4.

"It is not necessary to go very deeply into the precise nature of the wife's interest during marriage. The discussion has fed the flame of juridical controversy for many years. The notion that the husband is the true owner is said to represent the tendency of the French customs. 2 Brissaud, Hist. du Droit Franç. 1699, n. 1. The notion may have been helped by the subjection of the woman to marital power; 6 Laferrière, Hist. du Droit Franç. 365; Schmidt, Civil Law of Spain and México, arts. 40, 51; and in this country by confusion between the practical effect of the husband's power and its legal ground, if not by mistranslation of ambiguous words like dominio. See United States v. Castillero, 2 Black, [1], 17, 227, 17 L.Ed. 360, 400. However this may be, it is very plain that the wife has a greater interest than the mere possibility of an expectant heir. For it is conceded by the court below and everywhere, we believe, that in one way or another she has a remedy for an alienation made in fraud of her by her husband. Novisima Recopilación, Bk. 10, title 4, Law 5; Schmidt, Civil Law of Spain and Mexico, art. 51; Garrozi v. Dastas, 204 U.S. 64, 78, 27 S.Ct. 224, 51 L.Ed. 369, 378."

More recently the Supreme Court has had occasion to consider the nature of the wife's interest in community property under the statutes and decisions in a majority of the states of this country having the community property system, and has concluded in each instance that the wife's interest is such that for the purpose of the federal income tax the income from community property may be reported one-half by the husband and one-half by the wife. Washington, Poe v. Seaborn, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239; Arizona, Goodell v. Koch, 282 U.S. 118, 51 S.Ct. 62, 75 L.Ed. 247; Texas, Hopkins v. Bacon, 282 U.S. 122, 51 S.Ct. 62, 75 L.Ed. 249; Louisiana, Bender v. Pfaff, 282 U.S. 127, 51 S.Ct. 64, 75 L.Ed. 252; California, United States v. Malcolm, 282 U.S. 792, 51 S.Ct. 184, 75 L. Ed. 714, based on amendments of the California statutes made since the contrary result was reached in United States v. Robbins, 269 U.S. 315, 46 S.Ct. 148, 70 L.Ed. 285.

The liability of community property for debts of the husband has been litigated in many of these states. In III Vernier, American Family Laws (1935), pages 223, 224, it is stated:

"Except in Arizona and Washington, the general rule seems to be that the husband's creditors may look to the community property for the satisfaction of liabilities incurred by the husband, whether before or after marriage, in tort or in contract, as manager of the community or in his individual separate capacity. This follows naturally from the California conception that the husband owns the community property, and perhaps in the other jurisdictions as a practical scheme to make the system function fairly. But the result is not always strictly logical. Though the joinder of both spouses may be required in a conveyance of community real property, the husband may indirectly dispose of the same by charging it with his separate obligations. Though the wife may be conceded to have a present vested interest in community property, such interest may be seized and sold to satisfy obligations from which neither she nor the community derived any benefit. The Louisiana statute * * * seems to forbid the husband's premarital creditors attacking the community fund. An early decision, however, holds that the community property is liable for the husband's antenuptial debts, and that this provision applies only to a division of the property upon dissolution of the community, at which time the wife is entitled to reimbursement. * * *

"The Washington court, consistent with its entity theory of the community, holds that the community property is liable for 'community' obligations only. These are, roughly, obligations incurred (ordinarily, of course, by the husband) in tort or contract for the benefit of the community or while managing the community * * * Arizona now appears to have adopted in full the Washington view * * * The result in Arizona is largely based upon the wording of the local statute under which community property is liable for 'community debts' contracted by the husband. In these two jurisdictions, debts incurred by the husband during marriage are presumed to be community obligations. The Arizona and Washington rule goes a long way in the direction of equal rights, and is more consistent with the recognition that the wife has a present vested interest in community property. But it enables the husband without separate property to de-

velop extensive community assets, yet to escape during marriage just contractual and tortious obligations."

In Washington it has long been settled that community property cannot be taken in satisfaction of the separate tort or contract obligations of the husband. Brotton v. Langert, 1 Wash. 73, 23 P. 688; Stockand v. Bartlett, 4 Wash. 730, 31 P. 24; Schramm v. Steele, 97 Wash. 309, 166 P. 634; Coles v. McNamara, 131 Wash. 691, 231 P. 28. This was so held specifically as to an obligation of the husband contracted for the accommodation of a third person in Shuey v. Holmes, 20 Wash. 13, 54 P. 540; Case Threshing Machine Co. v. Wiley, 89 Wash. 301, 154 P. 437. In Arizona, the rule was originally the other way. Villescas v. Arizona Copper Co., 20 Ariz. 268, 179 P. 963. But this view was disapproved in Cosper v. Valley Bank, 28 Ariz. 373, 237 P. 175, 178, where the court concluded that "under the law of Arizona, community property is liable only for community debts, except as otherwise expressly provided in the statutes". The court said (28 Ariz. 373, 237 P. at page 176, 177):

"Development of the community property law of the western states has gone hand in hand with the general emancipation of women from the economic bonds which have so long burdened them. While under the common law the husband and wife were 'one,' and he was always the 'one,' the world has of recent years gone a long way toward recognizing that even a married woman was a human being, with most of the rights of such, and that the status of marriage partook more of the nature of a partnership than that of master and servant, or guardian and ward. Naturally this movement has gone further in the newer states, whose institutions had not yet crystallized into form under archaic ideas of the subjection of the female sex, than in the older commonwealths, whose laws reflect the views of the generation which founded them. * * *

"It will readily be seen that we have placed ourselves squarely in accord with the view prevailing in the state of Washington, and this is but natural, for our stat-utes on this subject are more analogous to those of that state than to any other."

In Payne v. Williams, 47 Ariz. 396, 56 P. 2d 186, it was held that community property could not be reached by a creditor on an accommodation note signed by the husband which did not benefit the community estate.

In other states, it has been broadly stated that community property is subject to the husband's debts. Many of the cases could be distinguished from the case at bar, in that it did not appear, as here, that the obligations were created by the husband gratuitously for accommodation of a third person, without benefit to the community. Even in Arizona and Washington, debts contracted by the husband during coverture are presumed to be community debts unless the contrary is shown. Cosper v. Valley Bank, 28 Ariz. 373, 237 P. 175; Merritt v. Newkirk, 155 Wash. 517, 524, 285 P. 442.[3] Explicit authority for the proposition that a debt shown to be of the character here involved may be satisfied out of community property, is not as numerous or impressive as has often been supposed. See Evans, Community Obligations, 10 Calif.L.Rev. 120, 123, 124, 143.

As to California, in the early case of Van Maren v. Johnson, 15 Cal. 308, the court took the view that the community property belonged to the husband, the wife having merely an expectancy, that therefore such property was subject to be taken for all the husband's debts; hence it was held that the community property was liable for antenuptial debts of the wife because upon marriage they became obligations of the husband. Many later cases, where the proposition is laid down that community property may be taken for the debts of the husband, do not indicate the character of the debts in question. Adams v. Knowlton, 22 Cal. 283; Schuyler v. Broughton, 70 Cal. 282, 11 P. 719; Davis v. Green, 122 Cal. 364, 55 P. 9; Farmers' Exchange National Bank v. Drew, 48 Cal.App. 442, 192 P. 105, 107, 108; McAlvay v. Consumers' Salt Co., 112 Cal.App. 383, 297 P. 135. What the view would be under the more recent legislation is not altogether clear. See Stewart v. Stewart, 199 Cal. 318, 249

---

[3] Compare 9 Manresa, op. cit. supra note 2, page 548: "All the debts and obligations contracted during the marriage by the husband, as legal representative of the partnership in its normal situation, are considered to be contracted by the partnership. The law presumes that they are contracted in the common interest. Nevertheless, this presumption may be rebutted by proof to the contrary, as we shall see when dealing with Article 1413."

982

P. 197; Id., 204 Cal. 546, 269 P. 439; United States v. Malcolm, 282 U.S. 792, 51 S.Ct. 184, 75 L.Ed. 714; Simmons, The Interest of a Wife in California Community Property, 22 Calif.L.Rev. 404; Note, 27 Calif. L.Rev. 49, 55.

Notwithstanding the holding in Hopkins v. Bacon, 282 U.S. 122, 51 S.Ct. 62, 63, 75 L.Ed. 249, that the interest of the wife in community property in Texas "is properly characterized as a present vested interest, equal and equivalent to that of her husband", it seems to be the accepted view in Texas that community property can be taken for the husband's debts, even his antenuptial debts. Portis v. Parker, 22 Tex. 699; Cleveland v. Cole, 65 Tex. 402; Lee v: Henderson, 75 Tex. 190, 12 S.W. 981; Strickland v. Wester, 131 Tex. 23, 112 S.W.2d 1047. But this result seems to follow from an explicit provision in the Civil Code of Texas.[4]

The earlier view in Louisiana was that the husband during marriage was the real and true owner of the whole community estate, the wife having merely an expectancy. Guice v. Lawrence, 2 La.Ann. 226. Relying on this case it was held in Davis v. Compton, 13 La.Ann. 396, that community property could be taken for the antenuptial debts of the husband. The court said: "As the husband has the right to alienate the effects of the community without the consent of his wife, creditors of the husband before marriage ought also to have the right to seize the effects of the community to satisfy their claims." This reasoning, of course, is inapplicable to Puerto Rico, so far as community realty is concerned, in view of Section 1313 of the Puerto Rico Civil Code, to the effect that the husband has not the power "to give, to sell and to bind for a consideration the real estate of the conjugal partnership, without the express consent of the wife." Furthermore, the early case of Guice v. Lawrence, supra, has been expressly repudiated in Phillips v. Phillips, 160 La. 813, 825, 826, 107 So. 584, which latter case was relied upon in Bender v. Pfaff, 282 U.S. 127, 51 S.Ct. 64, 75 L.Ed. 252, supra.

The Supreme Court of Idaho in Kohny v. Dunbar, 21 Idaho 258, 121 P. 544, 547, 39 L.R.A.,N.S., 1107, Ann.Cas.1913D, 492, held that on the death of the husband intestate the wife did not have to pay an inheritance tax upon her one-half of the community property because "she does not inherit her share of the common property"; though the husband is the manager of the community property, the statutes give him no better title to· the same than they give to his wife. Yet in Holt v. Empey, 32 Idaho 106, 178 P. 703, the same court held that community property could be taken for a gratuitous obligation of the husband contracted as surety for a third person without any benefit to the community; and this holding was cited with approval in Gustin v. Byam, 41 Idaho 538, 545, 240 P. 600.

In the two remaining states having the community property system we have found no case squarely on the point. See Beals v. Ares, 25 N.M. 459, 185 P. 780; Wright v. Smith, 19 Nev. 143, 146, 7 P. 365; In re Williams, 40 Nev. 241, 161 P. 741, L.R.A. 1917C, 602.

Appellant strongly urges that if the matter could be considered doubtful under the old Spanish law, this doubt is removed by the provisions of the Puerto Rico Code giving greater recognition and protection to the wife's interest, particularly Section 1313, which has been in the Puerto Rico Code since 1902 (Sec. 1328, Civil Code of 1902). The husband could not without the consent of the wife have mortgaged the community real estate to secure the accommodation obligation here in question; and it is argued that the husband should not be assumed to have the power to do indirectly what he is forbidden to do directly by creating an obligation, of no benefit to the community, in satisfaction of which community property may be seized and sold. This argument, however, was rejected in Holt v. Empey, 32 Idaho 106, 178 P. 703, supra. The argument proves too much if it is pressed to the point of asserting that the wife has to become a party to all obligations entered into by the husband in order for the community real estate to be chargeable. That would conflict with Sections 91, 93 and 1312 of the Code vesting in the husband the powers of administrator of the conjugal partnership. Vivaldi v. Mariani, 10

---

[4] Vernon, Revised Civil Statutes (1936), Art. 4620: "The community property of the husband and wife shall be liable for their debts contracted during marriage, except in such cases as are specially excepted by law." By Art. 4616 the wife's earnings, though for other purposes part of the community property, are exempt from the husband's debts. Arnold v. Leonard, 114 Tex. 535, 273 S.W. 799; see Hawkins v. Britton State Bank, 122 Tex. 69, 52 S.W.2d 243.

P.R.R. 420, 423. The most that could properly be urged is that Section 1313 and other sections of the Code recognizing and safeguarding the wife's interest to a greater extent than under the earlier Spanish code, warrant a conclusion that the husband's power to bind the partnership by contract is limited to obligations entered into by the husband in his representative capacity as administrator of the affairs of the community.

In the case at bar, the court below in its opinion on motion to reconsider cited as further authority for its conclusion the case of Stewart v. Stewart, 199 Cal. 318, 249 P. 197; Id., 204 Cal. 546, 269 P. 439, where the California court held that a series of statutory modifications of the community property institution, including an amendment in 1917 providing that the wife must join in the execution of any instrument conveying or encumbering community real estate, had not changed the fundamental nature of the wife's interest as theretofore understood, nor given the wife any present vested interest. The Supreme Court of Puerto Rico added, somewhat at variance with what it had said in its original opinion, that "Given the changes that have occurred in the institution in Puerto Rico, similar to those of · California, we do not doubt in reality that the interest of the wife is something more than a mere expectancy and that it can be said that here, as well as in California, her interest in the property of the conjugal partnership is greater than that of a presumptive heir."

■ If we were to take a wholly independent view of the question at issue we should be moved by the fact that the tendency of development in community property law has been in the direction of an increasing protection of the wife's interest; the prejudice to the wife which results from the decision below would seem to be a retrogression. But we may not reverse a judgment of the Supreme Court of Puerto Rico on a matter of local law unless that judgment is "inescapably wrong". Bonet v. Texas Co., 60 S.Ct. 349, 84 L.Ed. —— (Jan. 2, 1940); Bonet v. Yabucoa Sugar Co., 306 U.S. 505, 59 S.Ct. 626, 83 L.Ed. 946; Diaz v. Gonzalez, 261 U.S. 102, 105, 43 S.Ct. 286, 67 L.Ed. 550. The Supreme Court of Puerto Rico, in reaching a result that obtains in some of our states having the community property system, has given a literal construction to the provision of Section 1308 of the Civil Code of Puerto Rico to the effect that the community property is liable for "all the debts and obligations contracted during the marriage by the husband";[5] and has declined to reason by analogy from the prohibition in Section 1313 against the voluntary alienation by the husband of community real estate without the wife's consent. As was said in Cordova v. Folgueras, 227 U.S. 375, 378, 33 S.Ct. 350, 351, 57 L.Ed. 556: "The construction adopted in Porto Rico at least does no violence to the words of the statute; it concerns local affairs under a system with which the court of the Island is called on constantly to deal, and we are not prepared, as against the weight properly attributed to the local decision, to say that it is wrong."

■ Under the circumstances, it would require a touch of arrogance for us to say that the judgment appealed from is "inescapably wrong". As we pointed out in our opinion on the motion to dismiss, though Congress has given us appellate jurisdiction over the Supreme Court of Puerto Rico in matters of local law where the value in controversy exceeds $5,000, the exercise of this jurisdiction is so restricted by the canon prescribed by the Supreme Court of the United States that appeals in such cases are likely to be futile and merely to cause needless delay and expense.

The judgment of the Supreme Court of Puerto Rico is affirmed, with costs to the appellee.

---

5 The first paragraph of Section 1308 might without strain be interpreted as referring to obligations contracted by the husband in his capacity as administrator for the conjugal partnership, just as the partnership is liable for debts contracted by the wife in the more limited instances "in which she can legally bind the partnership". See footnote 2, supra, for the comments of Manresa and Scaevola on the corresponding Article 1408 of the Spanish code.