935 P.2d 588 (1997)
131 Wash.2d 822
Sharon KEENE, Petitioner,
v.
Ronald EDIE, Defendant,
Judith R. Evans, Respondent,
James E. Montgomery, Sheriff-Director, King County, Additional Defendant.
Angela SCAPPINI, Respondent,
v.
Joseph WARREN, Margaret Warren, and the marital community composed thereof, Appellants.
Nos. 63785-7, 64065-3.
Supreme Court of Washington, En Banc.
Argued October 22, 1996.
Decided April 24, 1997.
*589 Debra Stephens, Bryan Harneitaux, Spokane, Amicus Curiae on behalf of Washington State Trial Lawyers Association.
David Tracy, Renton, Seligmann & Beckerman, Willard G. Smith, Jr., Thomas R. Dreiling, Seattle, for Appellants.
Danald Kranenberg, Gregory Miller, Brink & Todd, Daniel P. Brink, Seattle, for Respondent.
ALEXANDER, Justice.
We consolidated Keene v. Edie and Scappini v. Warren, two appeals presenting an identical issue: may the victim of a tort, which was committed by a married person in his separate capacity, execute a judgment based on the tort claim against the tortfeasor's interest in community real property? We answer yes to that question and, consequently, reverse the Court of Appeals in Keene v. Edie and affirm the superior court in Scappini v. Warren.

Keene v. Edie
In 1991, Sharon Keene brought suit in King County Superior Court against Ronald Edie and Edie's spouse, Judith Evans. Keene alleged in her suit that Edie had molested her when she was a child and that Evans had negligently permitted the molestation.
Contemporaneous with the initiation of her lawsuit, Keene obtained a prejudgment writ of attachment against a parcel of community real property owned by Edie and Evans. Evans then brought several motions to quash the writ of attachment, but each was denied. Several months before trial, the trial court granted Evans's motion to dismiss Keene's complaint against her.
Prior to the conclusion of the trial on Keene's remaining claim against Edie, Evans obtained a divorce from Edie in the state of Idaho. Pursuant to a provision in the divorce decree, Edie executed a quit claim deed in favor of Evans, ostensibly conveying his entire interest in the community property that was the subject of Keene's writ of attachment.
A jury found in favor of Keene. Consistent with that determination, the trial court entered a judgment against Edie in the amount of $313,000. On the day the judgment was entered, Evans recorded a declaration *590 of homestead on the real property described in Keene's writ of attachment. Evans again sought to have the attachment released, but was unsuccessful in that effort.
When Keene found Edie's separate property and interest in community personal property insufficient to satisfy her judgment, she attempted to execute on Edie's interest in the community real property. After Evans was unsuccessful in an effort to quash a sheriff's sale of the property, Keene bid $133,000 of her judgment and obtained an undivided one-half interest in the property. The superior court subsequently entered an order confirming the sale.
Evans appealed the order confirming the sheriff's sale, as well as the order denying her motion to quash the sale. The Court of Appeals reversed, concluding that Keene had no right to execute her judgment against community real property. In doing so, it indicated that "[m]arried tortfeasors whose assets include only real property are effectively immune from judgment for separate torts." Keene v. Edie, 80 Wash.App. 312, 318, 907 P.2d 1217 (1995), review granted, 129 Wash.2d 1010, 917 P.2d 130 (1996). In light of that holding, the Court of Appeals found it unnecessary to address Evans's additional arguments that the prejudgment attachment was unconstitutional and violative of Washington's homestead statute. We granted review.

Scappini v. Warren
Angela Scappini sued Joseph and Margaret Warren in King County Superior Court. She claimed that Joseph Warren had sexually molested her when she was a child. After filing suit, Scappini obtained a prejudgment writ of attachment on a parcel of community real property owned by the Warrens. Following a bench trial, the trial court awarded Scappini a $100,000 judgment against Joseph Warren in his separate capacity. The Warrens then moved in superior court to quash Scappini's writ of attachment. The superior court issued an order denying the Warrens' motion. The Warrens appealed that order to Division One of the Court of Appeals. We thereafter granted Scappini's motion to transfer the appeal to this court and consolidated it with Keene v. Evans.

DISCUSSION
Evans and the Warrens each assert that they should prevail on the strength of this court's decision in Brotton v. Langert, 1 Wash. 73, 23 P. 688 (1890), in which we held that a tort creditor who had obtained a judgment against a married tort-feasor in his separate capacity was barred from executing the judgment against the tort-feasor's interest in community real property. Scappini and Keene, on the other hand, contend that Brotton no longer has any vitality in light of our more recent decision in deElche v. Jacobsen, 95 Wash.2d 237, 622 P.2d 835 (1980), and that even if it does, it should be overruled.
Evans and the Warrens are correct in observing that Brotton is directly on point.[1] Indeed, Brotton provided the impetus for the Court of Appeals' ruling in Keene, 80 Wash. App. 312, 907 P.2d 1217. Therefore, if that decision is still viable, we must reverse the trial court's decision in each of these appeals. In reaching our determination, it is necessary for us to examine that case and others from this court that have followed it in time, as well as relevant statutes and the policy implications that would flow from continued adherence to the rule set forth in Brotton.
The Brotton decision is as old as this state, the reported decision appearing in the first volume of Washington Reports. In that case, the plaintiff, Langert, sued a "constable," Brotton, for wrongfully levying upon and selling Langert's personal property. Langert, who did not join Brotton's wife as a defendant, obtained a judgment against the *591 constable in his individual capacity. When Langert attempted to execute his judgment against the Brottons' community real property, Brotton's wife intervened and sought an injunction to prevent its sale. The trial court dismissed her petition and she appealed to this court.
On review, this court observed that because the community is a creature of statute, the statutes relating to community property governed whether Langert could execute on the Brottons' community property in order to satisfy his judgment. Consequently, the court examined section 2410 of the 1881 Code of the Washington Territory, which was still in effect. It provided:
The husband has the management and control of community real property, but he shall not sell, convey or encumber, the community real estate, unless the wife join with him in executing the deed or other instrument of conveyance by which the real estate is sold, conveyed or encumbered, and such deed or other instrument of conveyance must be acknowledged by him and his wife: Provided, however, That all such community real estate shall be subject to the liens of mechanics and others for labor and materials furnished in erecting structures and improvements thereon as provided by law in other cases, to liens of judgments recovered for community debts, and to sale on execution issued thereon.[2]
Code of 1881 § 2410 (emphasis added). This court determined that section 2410 provided only two methods to alienate community property: (1) voluntary transfer by husband and wife together, and (2) certain specified liens. Because the latter did not include the judgment of a separate tort creditor, the court opined that permitting Langert to execute against Brotton's interest in property of the community would have rendered the proviso in section 2410 superfluous. In making that point, this court asked rhetorically, "If a judgment which is not obtained for a community debt becomes a lien upon community real property without any special proviso, why make a special proviso for a judgment which is obtained for a community debt?" Brotton, 1 Wash. at 81, 23 P. 688. Finally, this court concluded that community real property is exempt from execution where the tort creditor's judgment is against the tort-feasor spouse only.
Almost 30 years after Brotton was decided, this court handed down its decision in Schramm v. Steele, 97 Wash. 309, 166 P. 634 (1917). There, we extended the exemption identified in Brotton to personal property, holding that a married tort-feasor's interest in community personal property is immune from a judgment creditor's effort to execute the judgment against that interest if the judgment runs against only the tort-feasor spouse.
Not much changed in this area of the law until this court decided deElche v. Jacobsen, 95 Wash.2d 237, 622 P.2d 835 (1980). There, the plaintiff, Joan deElche, filed a complaint for damages against Jacobsen, Jacobsen's wife, and the Jacobsens' community, claiming that Jacobsen raped deElche at a social event. The trial court awarded deElche a substantial judgment against Jacobsen in his separate capacity, but dismissed her claims against Jacobsen's wife *592 and the community. Because the Jacobsens had earlier executed an agreement converting all of their property to community property, there were no assets against which deElche could execute her judgment. Consequently, she appealed to this court, "asking us to overturn the rule which immunize[d] Mr. Jacobsen's community property" from the force of her judgment. deElche, 95 Wash.2d at 239, 622 P.2d 835.
We began our analysis in deElche by acknowledging that under the principles established in the Brotton and Schramm cases, community-owned property was "exempt from separate tort judgments," noting that community liability could arise from a tortious act of one spouse only if the act occurred (1) in the course of managing community property, or (2) for the benefit of the marital community. deElche, 95 Wash.2d at 239-40, 622 P.2d 835; see, e.g., Bergman v. State, 187 Wash. 622, 626, 60 P.2d 699, 106 A.L.R. 1007 (1936); Milne v. Kane, 64 Wash. 254, 116 P. 659 (1911); Harry M. Cross, The Community Property Law (Revised 1985), 61 WASH. L. REV. 13, 136 (1986). We observed, however, that this rule imposing community liability in certain instances had often produced "illogical, inconsistent and unjust results," due to courts' inability to consistently determine whether a spouse's actions served to benefit the community.[3]deElche, 95 Wash.2d at 242, 622 P.2d 835.
We also indicated in deElche that the Brotton and Schramm opinions arose at a time when the community was viewed as a distinct legal entity, and that because we later rejected that idea, the "logical basis" for the exemption had been eroded. deElche, 95 Wash.2d at 242-44, 622 P.2d 835; see also Bortle v. Osborne, 155 Wash. 585, 589, 285 P. 425, 67 A.L.R. 1152 (1930) ("[T]he legislature did not create an entity or a juristic person separate and apart from the spouses composing the marital community."). Finally, we concluded that statutory law did not support an exemption for community property, noting that RCW 26.16.190,[4] which prevents a plaintiff who has been injured by a married person from recovering against the separate property of the nontort-feasor spouse, "certainly cannot be read to immunize the tortfeasor's one-half interest in the community property." deElche, 95 Wash.2d at 244, 622 P.2d 835.
In light of the aforementioned factors, we overruled Schramm, holding:
For torts not in the management of community business or for its benefit, such as the tort in the present case, the separate property of the tort-feasor should be primarily liable. If there is insufficient separate property, however, then the tort-feasor's half interest in community personal property shall first become liable, RCW 6.04.040(1), subject of course to the exemptions in RCW Title 6, Enforcement of Judgments.
deElche, 95 Wash.2d at 246, 622 P.2d 835 (emphasis added) (footnote omitted). Considerations of public policy and equity were fundamental to our decision to abolish a concept of law that either granted tort-feasors complete immunity, or imposed liability on innocent spouses "upon the most tenuous considerations of `benefit.'" deElche, 95 Wash.2d at 245, 622 P.2d 835. Our holding in deElche, we reasoned, more effectively balanced "these competing legal and societal considerations" and established a rule that *593 would "impose liability on the community when a tort is done for the community's benefit, protect the property of the innocent spouse if the tort was separate, and at the same time allow recovery by the victim of a solvent tort-feasor." deElche, 95 Wash.2d at 244-45, 622 P.2d 835.
Because Jacobsen had sufficient community personal property to satisfy deElche's judgment, we found it unnecessary to address whether Jacobsen's interest in community real property would similarly be subject to execution. deElche, 95 Wash.2d at 246 n. 3, 622 P.2d 835, Keene and Scappini argue that we should now take the step that we found unnecessary in deElcheoverrule Brotton and hold that a separate tort by a married person subjects the tort-feasor's interest in community real property to execution if the tort-feasor's separate property and one-half interest in community personal property are insufficient to satisfy the judgment.
Overruling a prior decision, even one as old as Brotton, is not a step that should be taken lightly. That is so because we endeavor to honor the principle of stare decisis, which "promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." Payne v. Tennessee, 501 U.S. 808, 827, 111 S.Ct. 2597, 2609, 115 L.Ed.2d 720, reh'g denied, 501 U.S. 1277, 112 S.Ct. 28, 115 L.Ed.2d 1110 (1991). On the other hand, as we noted in State ex rel. Washington State Fin. Comm. v. Martin, 62 Wash.2d 645, 665, 384 P.2d 833 (1963), "the rules of law should be ... adaptable to the society they govern." "Much as we respect the principle of stare decisis, we cannot yield to it when to yield is to overthrow principle and do injustice. Reluctant as we are to depart from former decisions, we cannot yield to them, if, in yielding, we perpetuate error and sacrifice principle." deElche, 95 Wash.2d at 247, 622 P.2d 835 (quoting Schramm, 97 Wash. at 318, 166 P. 634 (citation omitted)).
As discussed above, we concluded in deElche that policy considerations strongly favored allowing a judgment creditor to execute against the tort-feasor's interest in community personal property. Those same policy considerations favor extending the reach of such a judgment to the tort-feasor's interest in community real property. As we stated in Freehe v. Freehe, 81 Wash.2d 183, 192, 500 P.2d 771 (1972) "absent express statutory provision, or compelling public policy, the law should not immunize tort-feasors or deny remedy to their victims."
Yet as a consequence of the rule enunciated in Brotton, community real property continues to be immune from tort judgments against an individual spouse. Thus, trial courts still face two equally unappealing alternatives in cases involving married tort-feasors whose assets are primarily in the form of community real property: (1) impose half of the liability on the tort-feasor's innocent spouse by straining to find the tort was committed for the benefit of the community, or (2) force the equally inculpable victim to bear the damages. As we noted in deElche, "[t]he tort-feasor could hardly lose." deElche, 95 Wash.2d at 242, 622 P.2d 835.
Evans and the Warrens contend that a rule permitting a separate tort creditor to execute against the tort-feasor's share of community real property is inconsistent with our recent decision in Nichols Hills Bank v. McCool, 104 Wash.2d 78, 701 P.2d 1114 (1985). In McCool, we considered whether the rule of deElche should be expanded to allow a creditor to reach a husband's interest in community property after the husband, without his wife's consent, guaranteed a debt owed by their son. We answered that question in the negative, concluding that considerations of equity and the language of RCW 26.16.030(2), which prohibits unilateral gifts of community property, favored protecting the community from the "unauthorized contractual gifts of a spouse." McCool, 104 Wash.2d at 88, 701 P.2d 1114. Distinguishing deElche, we observed that in the "tort context," no statute prevents a plaintiff from reaching the defendant spouse's interest in community property. We also noted in McCool that, although the impetus in deElche to compensate an innocent tort victim "was sufficiently strong to override the interest in protecting the marital community," the plaintiff creditor in McCool contracted *594 voluntarily with the debtor husband, and therefore "had a measure of control over the legal consequences of [its] acts" that made the creditor less deserving of protection. McCool, 104 Wash.2d at 88, 701 P.2d 1114. That portion of our holding in McCool was consistent with language in a footnote from deElche, in which we stated:
It is not necessary and we do not decide here anything concerning separate debts. Distinction can be made between debts and torts, and it is not necessary that the rules regarding them be parallel. See generally Note, Tort Debts Versus Contract Debts: Liability of the Community Under California's New Community Property Laws, 26 Hastings L.J. 1575, 1577-80 (1975).
deElche, 95 Wash.2d at 246 n. 3, 622 P.2d 835.
With the foregoing in mind, we reject the argument of Evans's and the Warrens' that permitting a plaintiff to execute a separate tort judgment against the tort-feasor's in community real property is inconsistent with RCW 26.16.040, which in its earlier and essentially identical form was relied upon by the court in Brotton. As we explained in deElche, a distinction can be drawn between the actions of a spouse who voluntarily encumbers community property in an indirect way and one who does so involuntarily. In our judgment, RCW 26.16.040 relates to only the former. This view is in accord with that of noted community property commentator, Professor Harry Cross of the University of Washington Law School, who has pointed out:
It is possible to argue that despite [the Brotton majority's] analysis [section 2410] addresses only voluntary obligations directly or indirectly related to community real property and that there is no provision about noncontractual liability. On this reasoning, the deElche result could also be reached in enforcement by the tort victim against the half interest of the tort-feasor spouse in the community real property.
Harry M. Cross, The Community Property Law (Revised 1985), 61 WASH. L. REV. 13, 134-35 (1985); accord, WASHINGTON STATE BAR ASS'N, WASHINGTON COMMUNITY PROPERTY DESKBOOK § 6.30, at 6-38 (George T. Shields et al. eds., 2d ed. 1989) ("[R]eexamination of [RCW 26.16.040] suggests it affects only the voluntary act of the spouse(s) to encumber directly or indirectly, and that the statute can reasonably [be] found to be silent about the involuntary tort liability.").
Furthermore, we believe it is significant that an underlying foundation of the community property exemption was the so-called entity theory. As we noted in deElche, the early community property cases "were based on the `entity" theory of the community," under which "the entity and not the spouses owned the property." deElche, 95 Wash.2d at 242, 244, 622 P.2d 835. Those cases "speak of the community property statutes `breath[ing] into legal existence a distinct and original creation ... termed a "community." `"deElche, 95 Wash.2d at 242, 622 P.2d 835 (alteration in original) (quoting Brotton, 1 Wash. at 78, 23 P. 688). The rule exempting community property from separate tort judgments served to protect this entity "from the `misdeeds, improvidence or mismanagement' of the miscreant spouse." deElche, 95 Wash.2d at 242, 622 P.2d 835 (quoting Brotton, 1 Wash. at 80, 23 P. 688). As discussed above, we later rejected the entity theory. deElche, 95 Wash.2d at 243, 622 P.2d 835 (citing Household Fin. Corp. v. Smith, 70 Wash.2d 401, 403, 423 P.2d 621 (1967)). The rejection of this theory invalidated one of the fundamental reasons for exempting community real property from separate tort liabilities. Cf. deElche, 95 Wash.2d at 244, 622 P.2d 835.[5]
In sum, we are satisfied that public policy considerations and the absence of any statute exempting community property from involuntary encumbrances favor overruling Brotton v. Langert, 1 Wash. 73, 23 P. 688 (1890), and extending the rule that we enunciated in deElche to community real property. Expansion of the rule in deElche will *595 properly allow the victim of a separate tort to execute his or her judgment against the tortfeasor's interest in community real property in the event that the tort-feasor's separate property and share of community personal property are insufficient to satisfy the judgment.[6] We, therefore, reverse the decision of the Court of Appeals in Keene v. Edie and remand for that court of consideration of undecided issues. We affirm the order of the trial court in Scappini v. Warren.
DURHAM, C.J., and DOLLIVER, SMITH, GUY, JOHNSON, MADSEN, TALMADGE and SANDERS, JJ., concur.
NOTES
[1] In its brief, Amicus Curiae Washington State Trial Lawyers Association cites Kilcup v. McManus, 64 Wash.2d 771, 781, 394 P.2d 375 (1964), as partially overruling Brotton "on other grounds." See Br. of Amicus Curiae at 2. In Kilcup, we overruled the long-standing doctrine that "the community composed of a public official and spouse is not liable for the torts committed by the public official in the performance of his official duties." Kilcup, 64 Wash.2d at 779, 394 P.2d 375. We went on to say, however, that although Brotton was "reputed to be the first case announcing the [public official's community immunity] rule, [it] actually did not do so." Id. Thus, the Brotton holding was unrelated to the constable's status as a public employee.
[2] Aside from omitting the husband's exclusive right to management and control, the current Washington statutes have essentially retained the language of the 1881 code. The proviso noted in Brotton is currently codified at RCW 26.16.040. It provides:

"Community real estate shall be subject to the liens of mechanics and others for labor and materials furnished in erecting structures and improvements thereon as provided by law in other cases, to liens of judgments recovered for community debts, and to sale on execution issued thereon."
RCW 26.16.030(3) contains what is essentially the remainder of section 2410:
"Property not acquired or owned, as prescribed in RCW 26.16.010 and 26.16.020, acquired after marriage by either husband or wife or both, is community property. Either spouse, acting alone, may manage and control community property, with a like power of disposition as the acting spouse has over his or her separate property, except....
". . . .
"(3) Neither spouse shall sell, convey, or encumber the community real property without the other spouse joining in the execution of the deed or other instrument by which the real estate is sold, conveyed, or encumbered, and such deed or other instrument must be acknowledged by both spouses."
[3] As we pointed out in deElche, "[t]oo often the determination of whether the tort is separate or community has been based on distinctions without a difference." deElche, 95 Wash.2d at 240, 622 P.2d 835. In Newbury v. Remington, 184 Wash. 665, 52 P.2d 312 (1935), for example, an assault was held to be a separate tort, although the defendant was driving the community vehicle. The ruling turned on the fact that the defendant had stepped out of the car before striking the plaintiff. Yet, in Benson v. Bush, 3 Wash. App. 777, 477 P.2d 929 (1970), review denied, 78 Wash.2d 997 (1971), the community was found to have liability when the defendant, after using a chemical repellent to break up a fight between his community-owned dog and the neighbor's dog, became angry with the neighbor and sprayed the repellent at him as well. The Benson court found that the defendant had not "launched upon an individual enterprise of his own which had no relationship to the community." Benson, 3 Wash.App. at 780, 477 P.2d 929.
[4] RCW 26.16.190 provides:

"For all injuries committed by a married person, there shall be no recovery against the separate property of the other spouse except in cases where there would be joint responsibility if the marriage did not exist."
[5] Amicus Curiae Washington State Trial Lawyers Association suggests in its brief that Brotton was overruled sub silencio by deElche, and "should now be expressly abrogated as a relic of the archaic and discredited `entity' theory of community property." Br. of Amicus Curiae at 3.
[6] As we explained in deElche, the community property remaining after execution continues to be held as community property. See deElche, 95 Wash.2d at 246-47, 622 P.2d 835. If community real property is used to satisfy a separate tort judgment, the nontort-feasor spouse will obtain a right to reimbursement protected by an equitable lien, which, upon termination of the community relationship, gives to the nontort-feasor spouse as separate property the same amount as he or she would have received had the separate tort judgment not been satisfied out of community property.