# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Estate of:<br><br>RONALD D. HAAVE, SR.,<br><br>        Deceased. | No. 56887-0-II |
| | UNPUBLISHED OPINION |
| BARBARA J. ROGERS, Individually,<br><br>        Respondent,<br><br>  v.<br><br>RONALD D. HAAVE, JR., Individually, and<br>as Personal Representative of the Estate of<br>Ronald D. Haave, Sr.,<br><br>        Appellant. | |

CHE, J.—Barbara Rogers and Ron Haave, Sr. were in a relationship from 2009 until

Haave's passing in 2019. In the final years of his life, Ron[1] hired Rogers to be his full-time

caretaker through a long-term care insurance policy. Ron paid Rogers half of the funds he

received under the policy and kept the other half. After Ron passed away, Rogers filed a claim

for the withheld funds, but Ron's son, Dean, as personal representative of Ron's estate denied

---

[1] Because the decedent and his son share the same name, we refer to the decedent by his first
name, Ron, and his son by his middle name, Dean.

her claim and distributed the estate's assets to himself. An arbitrator determined that Rogers was entitled to the funds Ron had withheld. Rogers obtained a judgment from the superior court for enforcement of the arbitration award. The judgment was entered against Dean including his marital estate and against him as personal representative of the estate.

Dean appeals from the judgment arguing that the superior court erred by including his marital estate in the judgment. He argues that the superior court lacked authority to extend liability on the arbitration award to his marital estate and that doing so was erroneous because the debt constituted a separate debt related to his inheritance. We disagree and affirm.

FACTS

Barbara Rogers and Ron Haave, Sr. began a relationship in 2009. The following year, the couple began living together in Ron's home. They entered into a property agreement providing for shared expenses, a joint bank account, each to maintain their assets brought to the relationship, and a provision allowing Rogers to live in Ron's home for one year following his death. However, the couple did not follow the agreement.

By 2016, Ron's health had deteriorated. Through a long-term care insurance policy, Ron hired Rogers to be his full-time caretaker. She kept close records of her time working as a caretaker and regularly submitted billings to the insurance company. Rogers and Ron received $6,000 each month for Rogers' work. Ron kept 50 percent of the monthly payments, although Rogers did not agree to accept a reduced amount for her work. From 2016 to 2019, Ron kept $102,351 of the payments for Rogers' work.

Ron passed away in July 2019 at the age of 93. Approximately two months after Ron's death, Rogers moved to a modular home on her daughter's property, believing she could not stay

2

in the home for one year because of a reverse mortgage. Also, at the hospital during Ron's last illness, Dean and his spouse told Rogers she had one month to vacate the home. Ron's will designated his son, Dean as the sole beneficiary of the estate. Dean opened a probate of the estate, the assets of which were primarily Ron's bank account ($168,000) and home ($88,000). Rogers filed a creditor claim for the 50 percent of long-term care payments kept by Ron. Dean transferred the assets to himself after paying minor estate expenses and denying Rogers' creditor claim.

In January 2020, Rogers filed a Trust and Estate Dispute Resolution Act (TEDRA) action against Dean individually and as the personal representative of his father's estate. Rogers' creditor claim was subsequently consolidated with the TEDRA action.

The parties submitted the dispute to arbitration. The arbitrator found proof of a committed intimate relationship between Ron and Rogers but insufficient evidence as to how much and for what purpose assets were contributed by Rogers. The arbitrator also found that Rogers failed to prove the monetary value attributable to the breach of the property agreement. The arbitrator concluded that based on the failure of proof, there was no claim for equitable entitlement to assets acquired during the relationship or damages for breach of the property agreement. The arbitrator further concluded that Rogers was entitled to be reimbursed from the estate and from Dean the amounts wrongfully kept by Ron for her work as Ron's caretaker. The decision awarded Rogers $102,351, with interest from the time of the date of the creditor's claim. The arbitrator also awarded Rogers $52,792.50 in attorney fees and $8,103.90 in costs.

Rogers filed a motion in superior court for entry of a judgment "against the Estate of Ronald D. Haave, Sr., and Ronald D. Haave, Jr., and his marital estate, on the binding and final

Arbitration Award issued by the Arbitrator." Clerk's Papers (CP) at 118. Dean responded that the judgment should not include "his marital estate" as the arbitration award was entered against the estate and Dean individually. CP at 147. Rogers replied noting that Dean deposited the assets of the estate into a joint account he held with his wife and used some of the funds on community expenses. The superior court entered judgment against Dean, including his marital estate, and as the personal representative of the estate. Dean moved for reconsideration, which the superior court denied.

Dean appeals.

ANALYSIS

I. SUPERIOR COURT'S AUTHORITY

Dean argues that the superior court did not have authority to impose liability for the judgment on his marital estate because the arbitrator did not award community liability. We disagree.

Our courts encourage arbitration as a simpler, faster, and less expensive alternative to litigation. *Mainline Rock & Ballast, Inc. v. Barnes, Inc.*, 8 Wn. App. 2d 594, 608, 439 P.3d 662 (2019). Washington's uniform arbitration act, chapter 7.04A RCW, governs the arbitration process and enforcement of arbitration awards. Under RCW 7.04A.220, a party may file a motion with the superior court for an order confirming the award. RCW 7.04A.220 provides that the court shall issue a confirming order unless the award is modified, corrected, or vacated. "The confirming court does not have collateral authority to go behind the face of the award or to determine whether additional award amounts are appropriate." *Price v. Farmers Ins. Co. of Wash.*, 133 Wn.2d 490, 496-97, 946 P.2d 388 (1997). Once the superior court enters an order

confirming the arbitration award, RCW 7.04A.250(1) provides that the court shall enter a judgment on the award. This requirement imposes "a mere ministerial duty to reduce the award to judgment." *Price*, 133 Wn.2d at 497. Parties may appeal a final judgment on the award. RCW 7.04A.280(1).

Dean contends that by naming Dean's marital estate on the judgment, the superior court went "beyond the face of the arbitration award" and extended liability where the arbitrator had not. Reply Br. of Appellant at 2. We hold that this is a mischaracterization of both the arbitration award and the superior court's action. The arbitration award did not specifically extend or limit liability; it simply awarded Rogers monetary relief against Dean in his individual capacity and as personal representative of Ron's estate. Whether that award may be fulfilled through assets in Dean's marital estate is a question of law that was not the subject of arbitration. The superior court's order simply reduced the arbitration award to judgment as required under RCW 7.04A.250 and was not in excess of the superior court's authority.

## II. ERRONEOUS DECISION

The primary issue in this case is whether the judgment against Dean, a married person, for his conduct as personal representative of his father's estate may be enforced against his one-half interest in community property. Dean argues that it may not because the judgment arose from a breach of contract related to his inheritance and it was therefore his separate debt. We disagree.

The nature and legal effect of a judgment is a question of law. *Callan v. Callan*, 2 Wn. App. 446, 448, 468 P.2d 456 (1970). We review legal issues de novo. *Bainbridge Citizens United v. Dep't of Nat. Res.*, 147 Wn. App. 365, 371, 198 P.3d 1033 (2008). We review whether

5

property is separate or community de novo. *In re Marriage of Griswold*, 112 Wn. App. 333, 339, 48 P.3d 1018 (2002).

Community property is generally not available to satisfy the separate debts of either spouse. *Nichols Hills Bank v. McCool*, 104 Wn.2d 78, 88, 701 P.2d 1114 (1985). By statute, the separate property of either spouse is not subject to the "debts or contracts" of the other. RCW 26.16.010 (husband); RCW 26.16.020 (wife). But if a marriage partner commits a tort, his or her one-half interest in the community property may be reached to satisfy a tort judgment. *See deElche v. Jacobsen*, 95 Wn.2d 237, 246, 622 P.2d 835 (1980); *see also Keene v. Edie*, 131 Wn.2d 822, 834-35, 935 P.2d 588 (1997). "'[A]bsent express statutory provision, or compelling public policy, the law should not immunize tortfeasors or deny remedy to their victims.'" *Haley v. Highland*, 142 Wn.2d 135, 142, 12 P.3d 119 (2000) (quoting *Keene*, 131 Wn.2d at 832).

Rogers' original creditor claim was based on the estate's failure to pay her. That claim sounds in contract. However, Dean's liability to Rogers cannot reasonably be characterized as stemming from a breach of contract; no contract existed between Dean and Rogers. The arbitration award establishing Dean's personal liability to Rogers stems from his breach of fiduciary duty as personal representative in failing to pay Rogers the amount owed and instead distributing the entire estate to himself. This liability more aptly sounds in tort. As such, Rogers may recover against Dean's one-half interest in community property.

This result is further supported by the public policy interest of not immunizing tortfeasors or denying remedy to victims. As personal representative, Dean distributed the entirety of Ron's estate to himself and deposited the funds into his joint checking account shared with his wife. It

would be inequitable to deny Rogers recovery of funds she is rightfully owed because Dean unjustly comingled the estate's assets with his community property.

Nor can Dean shield his interest in community property from liability by characterizing the judgment as related to his inheritance. The arbitration award and order of judgment was entered against Dean as personal representative of the estate, not as the beneficiary of the estate. Dean contends he "inherited the funds in [his father's] bank account subject to his father's debt to Rogers," but Dean had an obligation as personal representative to satisfy the estate's debt preceding his inheritance of funds as Ron's son. Br. of Appellant 26. Dean did not inherit a debt as a beneficiary; he failed to properly satisfy a debt as personal representative before distributing the estate to himself. *See In re Estate of Haviland*, 177 Wn.2d 68, 80, 301 P.3d 31 (2013) (an heir apparent's right to a decedent's property depends on the outcome of probate proceedings including the resolution of creditors' claims).

### III. ATTORNEY FEES

Rogers argues that she is entitled to reasonable attorney fees for the cost of this appeal under RCW 11.96A.150. It is within this court's discretion to award fees and costs as the substantially prevailing party on appeal under RCW 11.96A.150. We may order an amount of fees deemed "equitable" and "may consider any and all factors that [we] deem[ ] to be relevant and appropriate." RCW 11.96A.150. Rogers argues that she should be awarded reasonable attorney fees for responding to Dean's appeal because the litigation spawned from Dean's breach of his fiduciary duty as personal representative when he appropriated the estate's assets to himself. The arbitrator and superior court agreed, and so do we. We award Rogers her reasonable attorney fees on appeal.

7

No. 56887-0-II

We affirm and award Rogers attorney fees on appeal.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

Che, J.

We concur:

Glasgow, C.J.

Cruser, J.